IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Domain Protection LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 3:15-cv-02244-L |
| v. | ) | |
| | ) | |
| Paul Raynor Keating | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
RENEWED RULE 12(b)(2) AND 12(b)(6) MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

1

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY ........................................................................................................... 1

ARGUMENT ......................................................................................................... 2

    1.    Standard for Motion to Dismiss ................................................................. 2

    2.    Rule 12(b)(2): The First Amended Complaint Does Not Establish Personal Jurisdiction Over Defendant ...................................................................... 2

            A.    The First Amended Complaint Contains Insufficient Allegations to Sustain Personal Jurisdiction Over Defendant ................................................................. 4

            B.    Keating's Contacts with Texas and the U.S. are Insufficient .................................................................... 5

            C.    There is No Personal Jurisdiction Under 18 U.S.C. § 1965 ............................................................................ 8

            D.    No Minimum Contacts Exist to Support Personal Jurisdiction ................................................................... 9

    3.    Rule 12(b)(6): The First Amended Complaint is Barred By the Texas Citizens Participation Act and Defendant is Otherwise Immune ........................ 20

            A.    The TCPA Bars Plaintiff's Action ................................. 21

            B.    Defendant is Immune Under Texas Law ........................ 22

CONCLUSION ...................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Alpert v. Crain, Caton*, 178 S.W.3d 398 (Tex.App.--Houston [1st Dist.] 2005, pet. denied) ..22

*Asahi v. Cheng Shin*, 480 U.S. 102 (1987) .............................................................................9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 556 U.S. 662 (2009)...................................................2, 15

*Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................................2

*Bamford v. Hobbs*, 569 F.Supp. 160 (S.D.Tex. 1983)..............................................................7

*Bidtellect, Inc. (F/K/A Domain Holdings Group, Inc.) v. Lisa Katz*, United States Federal
District Court, Southern Division, Civ No. 9:15-cv-80485-XXXX ...................................11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...............................................3, 4, 7, 14

*Cantey Hanger, LLP v. Byrd*, 2015 WL 3976267 (Tex. 2015) .......................................18, 22

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)....................................2

*Culberson v. Lykos*, 2015 WL 3875815 (5th Cir. 2015).........................................................21

*Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995) .........................................................................2

*Dorer v. Arel*, 60 F. Supp.2d 558 (E.D. Va. 1999).................................................................19

*Hawkins v. Upjohn Co.*, 890 F.Supp. 601 (E.D.Tex. 1994) ...................................................7, 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ....................4, 6, 15

*International Shoe Co v. Washington*, 326 U.S. 310 (1945) ......................................................4

*James v. Calkins*, 446 S.W.3d 135 (Tex.App.--Houston [1st Dist.] 2014, pet. filed) ........18, 21

*Micromedia v. Automated Broadcast Controls*, 799 F.2d 230 (5th Cir.1984) ..............9, 11, 14

*Netsphere v. Baron*, Case 3:09-cv-00988-L, U.S. Fed. Dist. Ct., N. Dist. TX .........................1

ii

*Network Solutions, Inc. v. Umbro International, Inc.*, 759 S.E.2d 80 (Va. 2000)..................19

*Novo Point, LLC and Quantec, LLC v. Katz, Payne et al*, Cause No. 401-01512-2014, in the 4th Judicial District Court of Collin County, Texas .............................................................1

*Oblio Telecom, Inc. v. Patel*, No. 3-08-CV-0279-L, 2008 WL 4936488 (N.D.Tex.) ...............9

*R2 Investments LDC v. Phillips*, 401 F.3d 353 (5th Cir. 2005) ...................................................2

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765 (N.D.Tex. 2008) ...................................9

*Russell v. Clark*, 620 S.W.2d 865 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.)................22

*Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp.2d 568 (E.D. Va. 2003)............................19

*Southmark Corp. v. Life Investors*, 851 F.2d 763 (5th Cir. 1988) ...........................................10

*Star Technology, Inc. v. Tultex Corp.*, 844 F.Supp. 295 (N.D.Tex. 1993) ...............................7

*Stern v. Islamic Republic of Iran*. Case No. 1:00-cv-02602-RCL Document 52 Filed 11/10/14, USDC, Nov. 10, 2014, Lamberth, Judge)............................................................19

*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) .........................................................2, 3, 4

*Stull v. LaPlant,* 411 S.W.3d 129 (Tex.App.--Dallas 2013, no pet.)......................................15

*Thomas v. Kadish*, 748 F.2d 276 (5th Cir. 1984)..........................................................4, 8, 15

*Walter v. City of Paris*, Civ. No. 09-3939, US District Court, So. Dist. Texas, Houston Div.14

*Zurakov v. Register.com, Inc.*, 304 A.D.2d 176 (N.Y. 1st Dep't 2003)...................................19

iii

**Statutes**

18 U.S.C. § 1965.........................................................................................................4, 7. 8. 19

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 ..................................................................17, 20

iv

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS RULE 12(b)(2) AND 12(b)(6) MOTION TO DISMISS**

Defendant Paul Raynor Keating files this Memorandum in Support of his Rule 12(b)(2) and 12(b)(6) Motion to Dismiss.

## SUMMARY

Defendant is an attorney. This action is nothing more than retribution as a result of Defendant's legal representation of his clients. On April 22, 2014, Keating's clients, Novo Point and Quantec, filed a claim against Lisa Katz and Christopher Payne (the "Collin County Action")[1] as part of long-storied case related to the assets of Novo Point, LLC and Quantec, LLC with which this Court has some history[2]. Mr. Keating is not counsel of record in the Collin County Action; rather the undersigned law firm is. Katz is the organizer of Plaintiff Domain Protection, LLC and Payne is the lawyer. Rather than defend their actions in the Collin County Action, Katz and Payne are using Plaintiff to harass and bully those simply providing legal services from Spain in the dispute about control of Novo Point and Quantec related to the *Netsphere Action.[3]*

Defendant filed a motion to dismiss the original Complaint on August 12, 2015. On August 25, 2015, Plaintiffs filed a First Amended Complaint (the "FAC"). The FAC fails to establish personal jurisdiction over the Defendant, who is in any event, protected by the immunity afforded by the Texas Citizen Participation Act and federal case law.

## ARGUMENT

1.      <u>Standard for Motion to Dismiss.</u>

---

[1] *Novo Point, LLC and Quantec, LLC v. Katz, Payne et al*, Cause No. 401-01512-2014, in the 4th Judicial District Court of Collin County, Texas which is still pending.

[2] The action seeks control over the LLCs assets and damages from defendants' improper actions including sales of LLC assets without authority. The Collin County Action was at one time in this Court before the Court remanded it on March 13, 2015. Case 3:14-cv-01552-L Document 71 Filed 03/13/15.

[3] *Netsphere v. Baron*, Case 3:09-cv-00988-L, U.S. Fed. Dist. Ct., N. Dist. TX. ("Netsphere Action"). Katz and Payne have also orchestrated a separate RICO action against Mr. McNair which is pending in this court.

1

Upon a motion to dismiss, only factual statements are entitled to a presumption of truth. Legal conclusions are to be ignored. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, the FAC must contain sufficient facts to state a claim to relief that is plausible on its face and not be speculative. *Id.* Factual pleadings must not rely upon labels, conclusions or formulaic recitation of the elements of a cause of action. *See Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 353, 362 (5th Cir. 2005).

The nature of Defendant's motion is necessarily a speaking motion and relevant evidence is provided in connection therewith. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A motion to dismiss may also properly present documents if they have been referenced in the FAC and central to the claims therein. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Courts may also refer to matters of public record when deciding a motion to dismiss. *See Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995)).

2.    Rule 12(b)(2): The FAC Does Not Establish Personal jurisdiction Over Defendant.

Upon challenge, the plaintiff bears the burden of establishing the district court's jurisdiction over a nonresident defendant. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Whether personal jurisdiction exists requires a multi-step analysis. A court may exercise personal jurisdiction over Defendant only if: "(1) the nonresident defendant is amenable to service of process under [Texas law]; and (2) the exercise of jurisdiction under

2

state law comports with the due process clause of the fourteenth amendment." *Stuart*, 772 F.2d at 1192. Because the Texas long-arm statute comports to federal constitutional limits, the FAC must establish that: (a) Defendant has some minimum contact with Texas directly resulting from an affirmative act on his part, and (b) it is fair and reasonable to require defendant to appear and defend the suit in Texas. *See id.*

To satisfy the minimum contacts prong, Plaintiff must establish that Defendant has "purposefully availed" himself of "the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id*. Given that Keating resides in Spain and does not own any property or businesses in Texas, presumably Plaintiff is relying solely upon specific jurisdiction which means the focus is on the relationship between the defendant, the forum and the litigation. *Id*. When specific jurisdiction is alleged, the Plaintiff must establish that defendant has "purposely directed" his activities at Texas residents and the litigation directly results from alleged injuries that "arise out of or related to" those activities. *Id*. The mere foreseeability of injury being caused in the forum state is not a "sufficient benchmark" for exercising personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183.

In measuring minimum contacts, the court may reference only the actions of the Defendant. "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Stuart,* 772 F.2d at 1192. Absent allegations proving that defendant is the alter ego of others, personal jurisdiction is not founded upon the conduct of the "others." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1873 (1984); *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984).

Assuming minimum contacts are established, the court must then consider whether

3

the exercise of personal jurisdiction comports with "'traditional notions of fair play and substantial justice.'" *International Shoe Co v. Washington*, 326 U.S. 310, 316 (1945).  This in turn requires consideration of (a) the interests of the State; (b) the relative conveniences and inconveniences of the parties and (c) the basic equities involved. *Stuart*, 772 F.2d at 1192. Jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent. *Burger King Corp.*, 105 S.Ct. at 2185.

Whether analyzed under the standards applicable to RICO (18 U.S.C. § 1965) or traditional minimum contacts standards, the FAC fails to allege a basis for personal jurisdiction over Defendant.

A.      The FAC Contains Insufficient Allegations to Sustain Personal Jurisdiction Over Defendant.

Plaintiff's RICO claim alleges that Mr. Keating, a resident of Spain, sent two emails from Spain to attorneys in the United States for the purpose of allegedly encouraging them to violate existing court orders to prevent payment of fees to anonymous attorneys and thereafter abscond with assets owned by Cook Islands entities owned by a Cook Island Trust. FAC at ¶ 40. Plaintiff also alleges that Defendant gained unauthorized access from Spain to a communications facility in Australia in order to block access to certain domain name accounts, preventing Katz from accessing the domain names, altering WHOIS and selling domain names. FAC at ¶ 53. Finally, Keating is alleged to have participated in filing, or conspired to file, one or more legal actions against Katz, Mr. Payne and/or others. FAC ¶ at 19.

4

Plaintiff's supplemental common law tort claims add no additional basis for personal jurisdiction, alleging that Keating's RICO-related conduct also constituted an intentional interference with contract and perspective economic advantage.

B.    Keating's Contacts with Texas and the U.S. are Insufficient.

There are no allegations that Keating is a resident of Texas, was ever present in Texas, or directly undertook any of the alleged actions in Texas or elsewhere within the United States.[4] Defendant was not "found" in Texas – service was undertaken while Keating was in New Orleans, Louisiana solely to participate in oral arguments before the Fifth Circuit on behalf of his clients. (Keating Decl. ¶ 2). Nor were his actions targeted towards Texas residents. He was merely representing clients, a Cook Islands Trust related to two Cook Islands LLCs, in issues subject to ongoing litigation.

Keating is an attorney licensed by the State of California. (Keating Decl. ¶ 3). He is not domiciled in California, or anywhere else in the U.S. (Keating Decl. ¶ 5). With the exception of a two-year period during which he resided in London, England, since 2003, Keating has resided permanently in Barcelona, Spain where he practices law.  (Keating Decl. ¶ 4). Keating has visited the State of Texas twice; a two-day social visit in 2000 and a second two-day visit in 2010 as a wedding guest. (Keating Decl. ¶ 6).

All client service agreements pursuant to which Defendant provides services are signed in Barcelona Spain on behalf of his employer, Global By Design International Consulting, SL (d/b/a Law.es). (Keating Decl. ¶ 7). Law.es is a Spanish limited liability entity duly formed and located in Barcelona, Spain. (Keating Decl. ¶ 8). Law.es is not a

---

[4] Plaintiffs allegations in Paragraph 1 of the FAC are addressed below.

defendant and Plaintiff has not alleged that Law.es is the alter ego of Defendant.[5]  Law.es is separate from Defendant; it maintains separate books and bank accounts and files its own tax return in Spain. (Keating Decl. ¶ 10). Keating does not perform legal services outside of Law.es. (Keating Decl. ¶ 9). Neither maintains, directly or indirectly, any office in the United States. (Keating Decl. ¶ 8). Law.es has only one small client in the U.S. (not in Texas) and all services are provided from offices in Spain. (Keating Decl. ¶ 16).

Neither Defendant nor Law.es has ever had a place of business, address, telephone number, bank account, or property in Texas. (Keating Decl. ¶ 11). Neither have ever had any employees (or solicited employees) in Texas. (Keating Decl. ¶ 12).  Neither has advertised in Texas nor sent personnel to Texas for business purposes. (Keating Decl. ¶ 13). Neither has sold goods or services to Texas residents nor entered into agreements to do so. (Keating Decl. ¶ 14). Neither has paid taxes in Texas. (Keating Decl. ¶ 10).

Although Paragraph 1 of the FAC alleges that Keating acted through agents in Texas "who, at Keating's direction, under their own names, filed legal papers drafted by Keating, with respect to matters relating to the subject matter giving rise to the claim in this suit," such is legally insufficient under the authority set forth below.

Although the FAC includes colorful allegations concerning Jeffrey Baron, such are an irrelevant attempt to smear Defendant, and in any event are insufficient to establish jurisdiction over Keating. Mr. Baron is not described as Defendant's agent. Allegations attempting to "combine" Defendant and Mr. Baron do not allege conduct by Defendant but rather allege conduct by Mr. Baron or others who are "like" Mr. Keating. *See, e.g.,* FAC at ¶¶

---

[5] Absent evidence supporting alter ego, the actions of a corporation are not attributed to an individual. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. at 1873; *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir.1984).

18 and 19. The language necessarily implies that Defendant did not engage in the alleged conduct.

Allegations concerning Mr. McNair, a resident of the Cook Islands, are similarly irrelevant as it concerns personal jurisdiction over Defendant. McNair's residency is not alleged but he is an attorney residing in the Cook Islands.[6] Defendant is not alleged to be the agent of Mr. McNair (or vice-a-versa). Allegations attempting to "combine" Defendant and Mr. McNair do not allege conduct by Defendant. Rather they allege actions by others who are "like" Keating or combine Defendant in a string which fails to differentiate who, if anyone, undertook what conduct, if any. *See, e.g.,* FAC at ¶¶ 24, 27 and 38. Such imprecise language is insufficient to support personal jurisdiction over Keating.

Even if the FAC properly alleged conspiracy it would remain fatally deficient. Allegations of conspiracy are not sufficient to establish jurisdiction absent finding a separate basis for establishing minimum contacts over Defendant as the non-resident co-conspirator. *See Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 609 (E.D.Tex. 1994); *Star Technology, Inc. v. Tultex Corp.*, 844 F.Supp. 295, 299 (N.D.Tex. 1993).[7]

Defendant does not transact business in Texas and there is no allegation that he does. (Keating Decl. ¶ 11). Neither Law.es nor Mr. Keating has any clients in the State of Texas. (Keating Decl. ¶ 15). Keating represents the Village Trust and RPV Ltd in its capacity as trustee of the Village Trust. (Keating Decl. ¶ 17). The Village Trust is a legitimate, registered

---

[6] See Case 3:14-cv-01552-L Document 20 Filed 05/16/14, McNair Affidavit.

[7] Allowing the exercise personal jurisdiction over a RICO defendant pursuant to plaintiff's conspiracy theory would allow any defendant, who is allegedly a co-conspirator with a person under the court's personal jurisdiction, to be haled into a forum with which that defendant has no contacts. This result would severely undermine the Supreme Court's rationale that the "Due Process clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182; *Hawkins,* 890 F.Supp. at 609. *See also Bamford v. Hobbs,* 569 F.Supp. 160, 169 (S.D.Tex.1983); *Thomas,* 748 F.2d at 282.

trust in the Cook Islands. (FAC, ¶19). The FAC does not allege that the Trust or RPV is resident within the United States. Neither Mr. Keating nor his employer are a party to any retainer, service or similar agreement with any attorney in the State of Texas, or any other attorney who has filed documents in the State of Texas for or on behalf of Mr. Keating's clients. (Keating Decl. ¶ 21).

Keating represents Novo Point, LLC and Quantec, LLC, both of which are legitimate, duly formed limited liability companies formed under the laws of the Cook Islands and both of which are owned by the Village Trust. ((Keating Decl. ¶ 19; FAC, ¶19; FAC ¶13). Ownership and management of the LLCs remain in the Cook Islands and Plaintiff does not allege otherwise. (Keating Decl. ¶ 20). Neither LLC is a resident of Texas (or elsewhere in the U.S.). The service agreement as to which Mr. Keating provides services to the Trust and the LLCs was executed on behalf of the Trust and LLCs in the Cook Islands and executed on behalf of Mr. Keating's employer in Barcelona Spain. (Keating Decl. 19).

C.      There Is No Personal Jurisdiction Under 18 U.S.C. § 1965.

Section 1965(a) expressly limits the application of personal jurisdiction in a RICO action, stating:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs. [8]

Although 18 U.S.C. § 1965(b) provides for U.S.-wide service of process, service does not equate to personal jurisdiction. Rather, Section 1965(b) permits the exercise of jurisdiction over "other parties" if jurisdiction is shown as to others and it is within the interests of justice. Analysis under section 1965(b) is only required when jurisdiction and

---

[8] Defendant asserts that Section 1965 limits the jurisdictional application of RICO claims, providing a narrower basis for jurisdiction than traditional notions of minimum contacts. As such, the failure to meet the requirements of Section 1965 requires dismissal of Plaintiff's RICO claims for lack of jurisdiction, even if minimum contacts were otherwise established to support the pendent tort claims.

8

venue in the forum is proper as to at least one defendant, but challenged as improper with regard to another.[9] *See Hawkins*, 890 F.Supp. 601, 605-06 (E.D.Tex. 1994). Here, there are no "other" defendants. As such, nothing in Section 1965(b) negates the precise jurisdictional requirements of Section 1965(a) as to Keating. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 779 (N.D. Tex. 2008); *Oblio Telecom, Inc. v. Patel*, No. 3-08-CV-0279-L, 2008 WL 4936488 at *4 (N.D.Tex.). Because Plaintiff cannot satisfy Section 1965(a), there is no personal jurisdiction over Keating.

> D.   No Minimum Contacts Exist to Support Personal Jurisdiction.

The FAC fairs no better when one considers traditional notions of minimum contacts. Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'" *Asahi v. Cheng Shin*, 480 U.S. 102, 108-109 (1987). Although a single purposeful contact may in a proper case be sufficient to meet the requirement of minimum contacts, the cause of action must arise directly from the single contact and not from actions causally related to the claims. *See Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir.1984). This is not a "proper case" and there is no causal link between the alleged conduct and the alleged injury to Plaintiff.

Sounding in RICO and related state claims of intentional interference, Defendant is alleged to have undertaken all actions from Spain - drafting legal papers filed by third party attorneys allegedly acting at Mr. Keating's direction,[10] writing two emails,[11] and gaining "unauthorized access" to a communications facility in Australia.[12] The act of sending the emails was not aimed at Texas. They concerned domains owned by Cook Islands entities and

---

[9] Because there is only one defendant, only Section 1965(a) applies.
[10] FAC, ¶2.
[11] FAC, ¶44, 47.
[12] FAC, ¶50, 53, 54, 56, 57.

registered with an Australian registrar. The email to Mr. Abel was directed to an entity in Florida. The email to Mr. Payne concerned his and Ms. Katz assertion of possession and control over the assets of Cook Islands entities. There are no allegations that Keating undertook any actions in Texas and no allegations causally linking the alleged actions with any harm to Plaintiff.

Two Fifth Circuit cases are particularly instructive as to what level of contact is sufficient to support a finding of personal jurisdiction. In *Southmark Corp. v. Life Investors*, 851 F.2d 763, 772 (5th Cir.1988), the Fifth Circuit confirmed a lack of jurisdiction over non-resident defendants faced with intentional interference claims. The court held that allegations of a tort occurring outside of Texas were not enough to show "purposeful availment" even though a Texas resident claimed injury. Rather, the court held, it must be shown that the alleged tortfeasor's intentional actions were purposefully directed toward the forum state and the tortfeasor had knowledge that the brunt of the injury would be felt by a particular resident of the forum state. *Id*. Here, there is no allegation that Defendant's conduct was purposely directed towards Texas or that he even knew of Plaintiff's existence, let alone connection to the dispute.

    (i)    *Allegedly Ghost Writing Legal Filings Does Not Support Personal Jurisdiction.*

The allegations of FAC, paragraph 2, do not support a finding that Keating acted through agents in a manner sufficient to subject him to jurisdiction in this case. The FAC admits that the documents Keating allegedly ghost wrote were legal filings, obviously intended for filing in a court of law. (FAC, ¶2). The FAC contains no allegations that such filings were in any way related to the claims asserted by Plaintiff herein. As such, the FAC does not causally link the allegation to Plaintiff's claim. *Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir.1984).

10

(ii)     *The Emails Do Not Support Finding Personal Jurisdiction.*

Neither of the alleged emails are sufficient to establish jurisdiction. Defendant issued both emails from Spain in his capacity as legal counsel for his Cook Islands clients, a fact made clear in the body of the communications and their signature blocks.  Both emails were sent to attorneys who themselves were actively engaged in litigation concerning the subject matter of the emails. Neither email contained a threat or suggestion that anyone violate any court order. Neither email was directed at Plaintiff. The FAC does not allege that Defendant knew of the existence of Plaintiff or that Plaintiff had any asserted interest in the subject domain names at any relevant time. The actual emails at issue show that neither contained any materially false or misleading statement and neither establishes that by sending them, Mr. Keating was "purposely" availing himself of the laws and benefits of the State of Texas. The FAC does not causally link the alleged actions to Plaintiff's claim and examining the FAC shows no such causal link could be legally sustained. *See Micromedia v. Automated Broadcast Controls*, 799 F.2d at 234.

2015 Email. Mr. Keating allegedly sent the April 30, 2015 email ("2015 Email") from Spain to Kenneth Abel, an attorney in Maryland representing Domain Holdings Group ("DHG"), a Delaware corporation located in Florida.[13]

DHG was then a named defendant in the Collin County Action.[14] As of April 30, DHG had also issued a notice of its intent to terminate its agreement with the LLCs and had filed an Interpleader action in Florida.[15] (Keating Decl. ¶ 25; 26). The email addressed Mr. Payne's objection to Mr. Abel's providing information concerning revenues earned by

---

[13] Complaint, ¶44. Mr. Payne received a copy as a disclosed recipient. A true and correct copy of the actual 2015 Email is provided as Keating Dec., Exhibit "A".

[14] Domain Holdings monetized the LLC's domain names.

[15] *Bidtellect, Inc. (F/K/A Domain Holdings Group, Inc.), v. Lisa Katz*, a/k/a Elisa Katz, in her capacity as purported representative of Novo Point, LLC and Quantec, LLC, United States Federal District Court, Southern Division, Civ No. 9:15-cv-80485-XXXX, Doc. 1, filed April 14, 2015.

11

Domain Holdings Group relative to domain names. The information was sought because Mr. Abel sent a proposed release agreement to Mr. Keating and Mr. Payne, which required Mr. Keating's Cook Island clients to release Domain Holdings of all claims. (Keating Decl. ¶ 27). Mr. Keating's 2015 Email explains that the information was needed to assess the viability of the proposed release. The 2015 Email also expresses an opinion as to Mr. Payne's objection to information being provided. The email fails to create any liability and certainly does not show that Keating purposefully availed himself to the jurisdiction of Texas.

The 2015 Email raises no threat and does not even reference a suggestion, let alone a demand, that Domain Holdings violate any court order.  The email did not contain any materially false or misleading factual statement. Rather, it expresses an opinion, providing rational in support thereof. Plaintiff does not allege that Mr. Able (or anyone else) reasonably believed the email was false or undertook (or neglected to undertake) any action as a result thereof.

2014 Email. The email of July 18, 2014 ("2014 Email") was sent from Spain to Payne.[16] When the 2014 Email was sent, both Katz and Payne were named defendants in the Collin County Action and Katz was the organizer, manager, and presumably the owner, of Plaintiff.  (Keating Decl, ¶ 33 Exh. 3). Payne is Plaintiff's counsel of record and signed the FAC herein.

The 2014 Email contests the authority of Katz and Payne to undertake actions prohibited by Section 5 of Ms. Katz's agreement ("Katz Agreement"). Section 5 of the Katz Agreement prohibits, among other things, the sale or assignment of assets, the retention of counsel, or the resolution of claims absent the prior written consent of the LLCs. The 2014 Email does not contain any materially false or misleading factual statement. Rather, it asserts

---

[16] Complaint, ¶47. A true and correct copy is provided as Keating Decl. ¶ 30 Exhibit 2.

an opinion and asks Mr. Payne for proof to the contrary. Again, not only does the email not create liability, it is not enough to establish jurisdiction.

(iii) *Accessing Fabulous.com from Spain Does Not Establish Minimum Contacts in Texas.*

Plaintiff also alleges that while in Spain, Keating impermissibly accessed Fabulous.com in Australia so as to "prevent the authorized access to the data and electronic communication while it was in electronic storage in the system," prevent the authorized access by Lisa Katz and Domain Protection," and that he "prevented Domain Protection from being able to properly sell domain names, manage the domain names, or generate income from the domain names it owns." (FAC, ¶50, 53). Even if true (which they are not), the allegations are insufficient to establish personal jurisdiction over Keating. First, Fabulous.com, the only registrar referenced in the FAC, is located in Australia. (Keating Decl. ¶ 36).

Second, Fabulous.com is not a "facility through which electronic communications services" of any nature are provided; it is a domain name registrar. Domain names are not routed through a registrar; they are routed through a Root Name Server.[17] The allegations are that Mr. Keating's access prevented Ms. Katz's access. There is no allegation that Mr. Keating altered any information concerning the domain names, including the name server designation. As such, nothing Defendant allegedly did could have prevented any domain name from resolving. Accordingly, the "millions" of users, were not, and could not have been, affected. This allegation has nothing to do with Texas. At most, Defendant's interactions with Fabulous may have prevented Cook Island LLCs from *altering* ownership

---

[17] Domain names resolve to a website because each domain name is associated with a "name server." Simply stated, when an Internet user enters a domain name in a browser such as Explorer or Safari, the browser sends messages to the user's ISP and subsequently a root name server asking for the "directions" to the computer where the website is stored. The user's computer then uses the "directions" to find the website which is then displayed on the users screen.

(WHOIS) and other records associated with the domain names. The lack of any allegation that Defendant knew of Plaintiff or that the domain names had allegedly been assigned to Plaintiff precludes a finding that he undertook actions intended to impact a resident of Texas. (*Micromedia v. Automated Broadcast Controls*, 799 F.2d 230, 234 (5th Cir.1984)). The mere foreseeability of causing injury in another state is not a "sufficient benchmark" for exercising personal jurisdiction; defendant must act with specific intention. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).

The newly added paragraphs 57 and 58 add nothing to the mix. That the receiver in *Netsphere* controlled accesses to Fabulous.com at one time, such control was terminated prior to any of the alleged conduct. The control thereafter passed to the LLCs. While the *Netsphere* Court may have granted Ms. Katz authority, such authority was granted to her only as a constructive trustee acting on behalf of the LLCs.[18] Any injury was thus not suffered by Ms. Katz but rather by the LLCs. The LLCs are Cook Islands entities and there is no allegation they are residents of Texas. (FAC ¶10). Regardless of how appointed, as a 'manager' of the LLCs, Ms. Katz may not assert individual claims concerning acts, which allegedly prevented her from undertaking her duties to the LLCs. That Ms. Katz was allegedly not able to access the Fabulous.com account from Texas is an insufficient foundation upon which to support personal jurisdiction. The FAC does not causally link the alleged actions to Plaintiff's claim and examining the FAC shows no such causal link could be legally sustained. *See Micromedia,* 799 F.2d at 234.

           (iv)    *Other Allegations Do Not Establish Minimum Contacts in Texas.*

Plaintiff alleges that Keating used 'inside connections' and wire fraud in attempting to secure the turnover of LLC assets to Domain Guardians, a company owned by Keating. (FAC

---

[18] Admitted in FAC ¶24.

¶56). Aside from the lack of any specificity regarding the allegedly fraudulent conduct (rendering it inherently defective), there is no allegation that the alleged attempt, if true, was undertaken in Texas, connected with Texas, or impacted any resident of the State of Texas. The FAC does not causally link the allegation to Plaintiff's claim. *Micromedia*, 799 F.2d at 234.

Although Plaintiff alleges that Keating "appeared" to raise claims in judicial forums (FAC ¶23), Plaintiff does not allege he was physically present. Except for the current action, Keating has not been served as a party to any action pending in the United States and, except for a Fifth Circuit appeal, is not counsel of record in any legal action pending in the United States.[19] Keating's involvement as appellate counsel for the LLCs before the Fifth Circuit in Louisiana has been limited to preparing and electronically filing briefs from Spain and making a seven-minute oral presentation to the appellate panel in New Orleans on July 8, 2015. Although Keating has provided several factual declarations, such have been solely as a witness at the request of local counsel. None of these activities amount to "purposely availing" himself of the benefits of Texas.

Plaintiff's allegation of control over RPV Ltd does not move the needle either. First, the allegation is a legal conclusion devoid of any factual allegation and thus not entitled to any presumption of truth. *See Iqbal*, 129 S. Ct. at 1950. Second, the FAC contains no allegations that RPV is a resident of Texas or undertook any acts complained of, or has been otherwise connected with the State of Texas. RPV is a separate entity and RPV's conduct may not be used to establish jurisdiction over Defendant. *See Helicopteros Nacionales de Colombia,* 104 S.Ct. at 1873; *Thomas v. Kadish*, 748 F.2d at 282.

---

[19] Keating was listed as counsel in *Walter v. City of Paris*, Civ. No. 09-3939, US District Court, So. Dist. Texas, Houston Div., a 2009 action brought by a California resident against the City of Paris, France regarding the domain name *Parvi.org*. Mr. Keating neither appeared nor prepared or filed documents in the *Walter* action.

15

Finally, because the alleged acts were undertaken by Defendant as an attorney and on behalf of either his employer or his clients, the fiduciary shield doctrine applies to prevent Defendant's conduct from being used to establish personal jurisdiction. *See Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.--Dallas 2013, no pet.).[20]

      (v)   *Reference to the Court Orders does Not Establish Personal Jurisdiction.*

The reference to U.S. Federal Court orders adds nothing to support a finding of personal jurisdiction. The *Netsphere* Court ordered that the Netsphere Action receiver to tender possession of LLC assets to Ms. Katz. No order granted Ms. Katz exclusive control over the LLCs; the court stated, among other things, that it did not have jurisdiction to resolve issues concerning ownership or control. No order expanded Ms. Katz' authority beyond possession or that authority set out in the Katz Agreement. No court order authorized her to sell assets.

Plaintiff did not exist until March 11, 2014, and was formed by Ms. Katz. Plaintiff was not named or referenced in any of the orders. There is no allegation that Defendant knew of Plaintiff's existence or alleged interest in the LLC assets. No court order prohibited Mr. Keating's alleged conduct in pressing the claims of his clients; as noted below the orders issued by this Court expressly recognize the right of Mr. Keating's clients to proceed with their claims. There is no causal link possible between the orders and the alleged conduct or injury. *See Micromedia*, 799 F.2d at 234. Thus there is no basis to find that by sending the emails (or undertaking any other act alleged) Mr. Keating "purposely" availed himself of the laws or benefits of Texas by asserting opposing views to the position taken by Ms. Katz or Mr. Payne.

---

[20] Likewise, the court orders do not provide a basis for jurisdiction over Keating. He was not a subject of the orders and filing a new lawsuit against new parties is not a way to address alleged violations of court orders.

16

The Possession Order. The *Netsphere* Court issued an order dated February 28, 2014, directing that the receiver tender possession of LLC assets to Ms. Katz ("Possession Order"). As to Ms. Katz, the Possession Order states:

> The court rejects the Receiver's request for it to conduct a show cause hearing or proceedings to determine the ownership of the Baron or Novo Point/Quantec assets, and will not consider any evidence in this regard. The court therefore denies the Receiver's request for a scheduling conference. While the ownership of Novo Point and Quantec may have been relevant in the bankruptcy proceeding, such a determination is not relevant or necessary to comply with the Fifth Circuit's mandate that the receivership, the creation of which was determined to be improper, be wound down expeditiously. Thus, any such determination is outside of the court's jurisdiction. For the same reason, the court does not and will not have jurisdiction in this case over any claims and disputes regarding the ownership of the receivership.

The above is a clear statement that the Court was not granting Ms. Katz "authority" as concerns the ownership or control of the LLCs or its assets. Rather, Ms. Katz was granted possession as a fiduciary to hold the assets in constructive trust for the benefit of the LLCs and their owner.

The Reconsideration Order. The *Netsphere* Court issued a further order dated March 11, 2014, reiterating its position that it lacked jurisdiction over the LLCs ("Reconsideration Order").

> For the reasons previously explained, the court concludes that it would be improper for it to conduct proceedings regarding the ownership of Novo Point LLC and Quantec LLC.

Again, nothing in the Reconsideration Order empowers Ms. Katz with any authority over the LLCs; the LLCs remain Cook Island entities whose corporate governance remains a matter of action in the Cook Islands, under Cook Islands law. At most Ms. Katz remained a fiduciary acting for the benefit of the LLCs and their owners.

The Strike Order. At Paragraph 46, Plaintiff quotes from an order issued in the *Netsphere* Action denying a motion by RPV to strike a filing by Mr. Payne ("Strike Order").

17

Complainant selectively cites the order, taking language out of context and misrepresenting its scope and application. The Strike Order does not state that RPV or Mr. Keating had no authority. Rather the Court denied the motion because the movant had not met its burden of proof in the context of the motion to strike. Specifically, the Court stated:

> "Thus, the court cannot determine from RPV's evidence whether Payne lacks authority or whether Garrett and Keating have authority to act on behalf of the LLCS, either generally or specifically with respect to the appeal at issue. RPV therefor has not met its burden…"

Nowhere does the Court state RPV or Mr. Keating had no authority. Nowhere in the order does the Court order Defendant or others to abandon their claims as outlined in the Collin County Action. The receivership was terminated on March 27, 2015, without the court altering its position as set forth in any of the referenced orders and without expanding the authority of Ms. Katz.

Remand Order. At Paragraphs 29, 38 and 46, Plaintiff also selectively quotes from the March 13, 2015 order remanding the Collin County Action ("Remand Order"). The quotation again takes the language out of context, distorting its scope and application. Having determined it lacked jurisdiction, the court was limited to remanding the action; no other order was possible.[21] Any peripheral language aside from remand, including that quoted in the FAC, is dicta.

Moreover, the Court's observations concerning Mr. McNair's authority were expressly conditional, observing that "IF" a condition was present then RPV and Mr. McNair's authority "could" be problematic. And, in any event, in the Remand Order, the Court expressly recognized the right of the LLCs and RPV to pursue claims against Ms. Katz and Mr. Payne and contest their authority.

---

[21] *See Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

18

"[T]he court's decision to not exercise jurisdiction over the dispute as to whom has authority to manage or control the LLCs does not preclude the LLCs from bringing suit to resolve the issue of whom has authority to manage or control the LLCs."

The actual emails and public records establish the lack of any causal link between the alleged actions and the alleged orders. By taking steps in favor of his client, Defendant's conduct was consistent with the language of the Remand Order recognizing the rights of the LLCs to raise claims.

Plaintiff does not allege that Defendant interfered with the Receiver's tender of possession and the fact that Ms. Katz received possession is established both by Plaintiff's own admission that Ms. Katz allegedly assigned the assets to Plaintiff and by Ms. Katz's filings in the Collin County Action. Nothing supports a finding that Defendant "purposefully availed himself" for the purposes of minimum contacts.

Even if the court orders could be read to prohibit Defendant's alleged conduct, they cannot establish minimum contacts.[22] If it were otherwise, third parties unrelated to a court order could hail non-U.S. resident defendants into U.S. courts simply by alleging that the defendants had opined that the court orders did not apply. Plaintiffs cannot thus point to the court orders as a basis for finding jurisdiction over Defendant.[23]

That the emails and interaction with Fabulous.com may have been related to Novo Point and Quantec domain names, is also insufficient to satisfy the standards of minimum contacts. Novo Point and Quantec are Cook Islands entities and the FAC does not allege them to be residents of the State of Texas.

---

[22] *See James v. Calkins*, 446 S.W.3d 135 (Tex. App. 2014) - a communication in or pertaining to a judicial proceeding constitutes the exercise of the right to petition for the purposes of the Texas Citizen's Protection Act (TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i))); *Cantey Hanger, LLP v. Byrd*, 2015 WL 3976267, *3 (Tex. 2015) "attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation".

[23] Enforcement of court orders remain the prerogative of the issuing court.

19

The involvement of domain names is insufficient to support jurisdiction. The domain names are not property and are not "located" in Texas. Rather, domain names are merely a contractual relationship with the registrar, akin to the right to use a telephone number.[24] The "contract" is a "click-through" agreement governed by Australian law and existing only on the Fabulous.com computer system.[25]

The FAC fails to allege facts sufficient to establish personal jurisdiction over Defendant. The defect is not subject to amendment and the FAC should be dismissed with prejudice.

3.     Rule 12(b)(6): The FAC is Barred By the Texas Citizens Participation Act and Defendant is Otherwise Immune.

The FAC is precluded by the Texas Citizens Participation Act ("TCPA") and by immunity to the acts of counsel in litigation justifying dismissal under Rule 12(b)(2) and 12(b)(6).[26]

The FAC confirms that Defendant's conduct was in connection with client representation alleging that Mr. Keating was working with or for Jeff Baron, David McNair, RPV Ltd. or the LLCs. *See, e.g.,* FAC at ¶¶ 2, 23, 27, 30, 38, 40).[27] This is confirmed by the admission in FAC ¶2 and a reading of the actual emails, which prove that Keating was acting as an attorney and that the communications were issued in connection with issues raised by Keating's clients in the Collin County Action. Keating issued the emails as an attorney and

---

[24] *See Stern v. Islamic Republic of Iran*. Case No. 1:00-cv-02602-RCL Document 52 Filed 11/10/14, USDC, Nov. 10, 2014, Lamberth, Judge); *Size, Inc. v. Network Solutions, Inc.,* 255 F. Supp. 2d 568, 573 (E.D. Va. 2003); *Zurakov v. Register.com, Inc.*, 304 A.D.2d 176, 760 N.Y.S.2d 13 (1st Dep't 2003); *Network Solutions, Inc. v. Umbro International, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000); and, *Dorer v. Arel*, 60 F. Supp. 2d 558 (E.D. Va. 1999)

[25] *See* http://www.fabulous.com/informationcenter/index.htm?formdata[qid]=1516. (Keating Decl, ¶ 37).

[26] Raised as a part of Defendant's special appearance; Immunity precludes a finding of personal jurisdiction or liability.

[27] Mr. Payne has described Mr. Keating "Mr. McNair's counsel" in documents filed in the Collin County Action. See 3:14-cv-01552-L Doc. 60, filed 08/21/14. Mr. Payne unsuccessfully sought to enjoin Mr. Keating from undertaking further actions as counsel for McNair and the LLCs. See: 3:14-cv-01552-L Doc. 60, filed 08/21/14.

they were sent to attorneys who were either representing defendants, or who were defendants, in the Collin County Action. Fabulous was a named defendant in the Collin County Action at the time of the alleged conduct concerning Fabulous.com and preventing the disbursement of the LLCs' assets was of material importance.

The subject matter of all communications and the purpose of all actions, including those involving Fabulous, were "related" if not "directly connected" to the issues of ownership and control presented by Keating's clients in the Collin County Action. There is nothing to imply that Defendant's conduct was outside of his role as legal counsel or that the alleged actions were unrelated to pending litigation.

A.     The TCPA Bars Plaintiff's Action.

The Texas Citizens Participation Act ("TCPA") "provides an expedited means for dismissing lawsuits that involve the exercise of certain constitutional rights . . . " *Culberson v. Lykos*, 2015 WL 3875815, *18 (5th Cir. 2015). The TCPA bars actions "based on, relates to, or is in response to, the party's exercise of the right of free speech; the right to petition; or the right of association." *Id*. The TCPA and its underlying principles apply in federal court. *Id.*

In *James v. Calkins*, 446 S.W.3d 135 (Tex. App.—Houston [1st Dist.] 2014, pet. filed), the court concluded that the right to petition covered actions by attorneys based upon or undertaken in connection pending lawsuits. *Id*. at 147. The court dismissed the action finding that a communication in or pertaining to a judicial proceeding constitutes the exercise of the right to petition for the purposes of the TCPA. *Id*. (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(A)(i)). The TCPA defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic," and does not limit its application to only statements made in the

21

pleadings of an ongoing case. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1). As in *James*, the instant action was filed in response to communications made during the course of Defendant's representation of his client and in connection with ongoing litigation involving both the recipients and subject matter of the communications. *See James*, 446 S.W.3d at147-48.

The TCPA has been applied in federal proceedings. *See Christopher Williams v. Cordillera Communications, Inc., et al,* No. 2:13-cv-00124 (S.D. Tex. June 11, 2014) – recognizing that the procedures of the TCPA are "designed to prevent substantive consequences–the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law...." *Id*. at 2.

B.   Defendant is Immune Under Texas Law.

Under Texas law, an attorney is immune from liability for statements made to a third-party when those statements were related to an ongoing legal proceeding. Long recognized by Texas courts, "[p]ublic policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients." *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e. The Texas Supreme Court has held that "attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 2015 WL 3976267, *3 (Tex. 2015). The *Cantey* court ruled that the immunity applied to claims whether the conduct sounded in fraud or misrepresentation reasoning that "[a]n attorney is given latitude to 'pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict that would arise if he were forced constantly to balance his own potential exposure against his client's best interest.'" *Cantey*, 2008 WL 2938823, at *5 (citing *Alpert v. Crain, Caton*, 178 S.W.3d 398, 405 (Tex. App. 2005)). To hold attorneys liable to non-clients for

22

fraudulent actions or misrepresentations during the course of their representation of a client would degrade the intent of the attorney-immunity defense, "to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates." *Id*. at *3-5 (internal citations omitted).

C.    Plaintiff's Claims Are Barred by the *Noerr-Pennington* Doctrine.

The *Noerr-Pennington* Doctrine confirms immunity for statements and actions undertaken in a judicial setting. *See Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). It has been regularly expanded and applied to bar RICO claims arising from alleged conduct undertaken outside of the judicial setting but "related" to litigation. *See Giles v. Phelan, Hallinan & Schmieg, LLP*, __F.Supp.2d__, No. 11-6239, 2013 U.S. Dist. LEXIS 78161 *17-18 (D.N.J. June 4, 2013).

Because the defense of immunity appears within the allegations forming the FAC, no proper cause of action may be stated and the FAC is subject to dismissal. *Id*. at *5.

## CONCLUSION

Plaintiff has already had the opportunity to amend its complaint after Defendant's original Motion to Dismiss. It should not be granted another. For the foregoing reasons, Defendant requests that the FAC be dismissed with prejudice.

Respectfully submitted,

GRAY REED & McGRAW, P.C.

By:____/s/ Travis Crabtree_____
        TRAVIS CRABTREE
        State Bar No. 24015192
        tcrabtree@grayreed.com
        1300 Post Oak Blvd., Suite 2000
        Houston, Texas 77056
        (713) 986-7000
        (713) 986-7100

23

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served through ECF on this 2nd day of September, 2015:

/s/ Travis Crabtree                              
TRAVIS CRABTREE

25