IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DOMAIN PROTECTION LLC,** | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 3:15-CV-02244-L |
| | § | |
| **Paul Raynor Keating,** | § | |
| *Defendant*. | § | |

# DOMAIN PROTECTION LLC'S RULE 72(a) OBJECTION [RE: DOC 22]

TO THE HONORABLE HON. SAM A. LINDSAY, UNITED STATES DISTRICT JUDGE:

Pursuant to Fed.R.Civ.P. 72(a), plaintiff, ("Domain Protection"), respectfully objects to the magistrate order, entered as Doc. 22, and for good cause shows the following:[1]

## I.

The Honorable Magistrate used the wrong legal standard in considering Keating's contact with Texas with respect to Domain Protection's interference claim under the Stored Communications Act.

18 U.S.C. 2707 establishes a federal cause of action for a person aggrieved by a violation of 18 U.S.C. Chapter 121, the **Stored Communications Act**.[2]

---

[1] A motion requesting reconsideration by the Honorable Magistrate was filed concurrently with this objection. This objection was filed in an abundance of caution in order to avoid the issue of waiver as to the objections raised herein.

[2] 18 U.S.C. §§ 2701–2712.

18 U.S.C. 2510(12) defines "electronic communication" to include any transfer of data of any nature transmitted in whole or in part by a wire or electromagnetic systems that affects interstate or foreign commerce. 18 U.S.C. 2510(15) defines "electronic communication service" as any service which provides to users thereof the ability to send or receive wire or electronic communications. These definitions are applied to the Stored Communications Act pursuant to 18 U.S.C. 2711(1).

18 U.S.C. 2701 imposes liability against whoever intentionally exceeds an authorization to access a facility through which an electronic communication service is provided and prevents authorized access to electronic communication while it is in electronic storage. Liability under section 2701 is based on the prevention of authorized access to the communication while it is in electronic storage.

In this lawsuit, Domain Protection avers that the U.S. Federal Receiver controlled the Fabulous.com domain name portfolio through access, at Dallas Texas, to a web portal for the Fabulous.com facility (through which the electronic communication service for the domain names is provided). By Court order, control of the portfolio was ordered turned over to Lisa Katz, at Dallas Texas, to which end the Receiver provided Katz passwords to access the web portal. Domain Protection avers that Keating's actions were intentionally directed at interfering with the orders of the U.S. District Court to prevent the authorized access in Dallas, Texas by Lisa Katz to that electronic communication.

Domain Protection expressly pled that Keating intended that his actions would result in the loss of access by Lisa Katz in Dallas Texas, and that such loss of access resulted.

In the cornerstone case of **Calder v. Jones**, 465 U.S. 783 (1984), the plaintiff Jones was defamed in an article written and edited by the defendant Calder in Florida. Calder was a Florida resident. He had been to California only twice — once, on a pleasure trip, prior to the publication of the article and once after to testify in an unrelated trial. Id. at 786.

The Supreme Court ruled in Calder that jurisdiction over Calder in California was proper because of the intentional conduct in Florida calculated to cause injury to a plaintiff in California. Id. at 791. The Supreme Court reasoned as follows:

> "[T]heir intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works"
>
> Id. at 789-790.

Further, the Supreme Court explained that "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. at 790.

We share the privilege of living in a new, interconnected world. The internet allows individuals in Dallas Texas to access stored electronic communication "in the cloud". "In the cloud" means, in real terms, that we access the information where we are-- regardless of where the physical data is stored. Thus, for example, we access court records via computer. Those records-- which we access in this forum-- may be physically located in California, Canada, Mexico, or the islands of Micronesia.

If Keating intentionally interferes with access in Dallas Texas to this Court's records, he cannot escape the justice and jurisdiction of this Court because the data-- accessed by the users in this forum-- was electronically stored in Mexico or elsewhere. Pursuant to the doctrine laid down by the Supreme Court in <u>Calder v. Jones</u>, a defendant is subject to the jurisdiction of the courts wherever he "calculated to cause injury". When his actions were calculated to cause injury in Dallas, Texas, then Keating is subject to personal jurisdiction in Dallas, Texas to answer for his actions.

Thus, pursuant to the Calder doctrine, it is not where Paul Keating took his actions, but where he calculated to cause injury-- through his actions.

## II.

The Honorable Magistrate used the wrong legal standard in addressing the question of minimum contacts with respect to the RICO claim.

The Honorable Magistrate found that minimum contacts must exist with the forum state. That is the wrong legal standard in determining minimum contacts with respect to nation-wide service under RICO.

While the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test. Thus, the Fifth Circuit has ruled that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." Busch v. Buchman, Buchman & O'Brien, 11 F.3d 1255, 1258 (5th Cir. 1994)(emphasis added).

Accordingly, the proper minimum contacts analysis, with respect to RICO nation-wide service, should be as to Keating's contacts with the U.S., not with the forum state of Texas.

## III.

The Honorable Magistrate also used the wrong legal standard in addressing a 'causal relationship' between Keating's agents in Texas, Keating's transaction of his affairs in Texas, and the nation-wide venue and service provision of 18 U.S.C. 1965(a).

Congress provided in section 1965(a) that a civil action may be instituted where a defendant "resides, is found, has an agent, or transacts his affairs." Congress did not require that the residence, agent, or transaction of affairs must also have a causal relationship to the claims pled in the civil action. Rather, the Honorable Magistrate has erroneously interchanged the legal standard for testing specific jurisdiction in a <u>Rudzewicz</u> case (i.e., a diversity case) and the legal standard under the RICO nation-wide service provisions. Pursuant to 18 U.S.C. 1965(a), if Keating has an agent, is found, or transacts his affairs in the Northern District of Texas, then a RICO civil action against him may be maintained in this district-- regardless of the nexus between where he resides, his agents, or the affairs he conducts there, and the RICO claims pled.

Accordingly, the issue under section 1965(a) is whether Keating has agents in Texas or has transacted his affairs in Texas, and not whether there is a causal relationship between those contacts to the claims pled.

## IV.

The Honorable Magistrate erred by, *in effect*, deciding the factual issue as to what Keating has done in this district, instead of allowing Domain Protection the opportunity to conduct discovery to develop the issue.

The Honorable Magistrate took the pleading allegations against Keating to be that Keating was involved as a ghost-writer of legal pleadings in this district. That would be one fact scenario: An attorney other than Keating could be directing the litigation in this forum and could hire Keating in Spain to 'ghost-write' pleadings. In such a case, Keating would neither be transacting business in this forum, nor would he have any agents in this forum. In such a factual scenario, Keating would simply have been engaged, in Spain, to perform services for an actor who was doing business in this forum.

Domain Protection, however, has alleged something else. In its First Amended Complaint, (Doc. 8), Domain Protection alleges that Keating is conducting litigation in this forum by directing his agents in Texas to file papers for him. Specifically, Domain Protection pleads that "Keating conducted business in this forum, using agents to file, in their name, legal papers drafted by Keating." Domain Protection's allegation are direct and explicit, "Keating has agents in Texas."

The foregoing factual scenario is a critically different factual scenario from merely ghost-authoring documents filed in this forum. Keating is not alleged to have been retained by local counsel to draft material. The allegation in this lawsuit is the opposite. Keating is alleged to have agents here and is alleged to

be transacting his affairs in Texas using his agents to carry out his affairs under their names.

In its motion for discovery, Domain Protection explained that "The issue of Keating authoring filings for his clients (Baron/McNair) and having agents in Texas who file the documents in their name is relevant because Keating argues that the RICO section 1965(a) venue provision should limit personal jurisdiction to venues where a defendant transacts his affairs or has an agent."

Thus, because 18 U.S.C. 1965(a) allows a RICO action to be brought where the defendant "has an agent" or "transacts his affairs", the determination of the actual relationship between Keating and this forum are relevant. Keating claims he has nothing to do with the filings made in this district. The Honorable Magistrate took the allegations to be that Keating ghost-wrote the filings. The allegations-- and basis for request for discovery-- are that (1) Keating is conducting the litigation in this forum and (2) Keating has agents in Texas through which he conducts the litigation in this forum.

Again, if Keating merely ghost-wrote pleadings while in Spain, that would not meet the requirements of 18 U.S.C. 1965(a). However, if Keating conducted the litigation in this forum through agents, that would meet the requirements of section 1965(a) which allow for maintaining suit where the defendant has agents **or** transacts his affairs. The Honorable Magistrate gleaned the former, gost-writing scenario. However, Domain Protection has alleged the latter and requested the opportunity to develop the facts on that issue.

## PRAYER

For the foregoing reasons, Domain Protection respectively objects to the Magistrate Order entered with respect to an opportunity for Domain Protection to conduct discovery as to the factual issues raised in Keating's motion to dismiss.

Respectfully submitted,

 /s/ Christopher A. Payne
Christopher A. Payne
Law Office of Christopher A. Payne, PLLC
9101 Lyndon B Johnson Fwy Ste 760
Dallas, TX 75243
Phone: 972 284-0731
Fax: 214 453-2435
chris@ChristopherAPayne.com

## CERTIFICATE OF SERVICE

I certify that this brief was served this day on all parties who receive notification through the Court's electronic filing system.

CERTIFIED BY:   /s/ Christopher A. Payne
                Christopher A. Payne