IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DOMAIN PROTECTION LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-2244-L** |
| | § | |
| **PAUL RAYNOR KEATING,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Paul Keating's Renewed Motion to Dismiss (Doc. 9), filed September 2, 2015; and Plaintiff Domain Protection's Motion for Reconsideration (Doc. 23), filed April 18, 2016. After carefully considering the motions, briefs, pleadings, and applicable law, the court **grants** Defendant Paul Keating's Renewed Motion to Dismiss for lack of personal jurisdiction (Doc. 9); **denies as moot** Defendant Paul Keating's Renewed Motion to Dismiss under Rule 12(b)(6) (Doc. 9); and **denies as moot** Plaintiff Domain Protection's Motion for Reconsideration (Doc. 23).

### I.   Factual and Procedural Background

On July 7, 2015, Plaintiff Domain Protection LLC ("Domain" or "Plaintiff") brought this action against Defendant Paul Raynor Keating ("Keating"), asserting claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and tortious interference with a contract and prospective relations. With respect to its RICO claim, Plaintiff alleges that Keating orchestrated a racketeering and wire fraud conspiracy with the intent to block Domain's access to certain valuable internet domain names, in violation of RICO. The essence of Plaintiff's claims is that Keating and his confederates, including Jeffrey Baron

("Baron"), through a series of lawsuits and extrajudicial maneuvers, effectively prevented the transfer of domain names, previously owned by Quantec LLC and Novo Point LLC (the "LLCs") and the Village Trust, to Domain, thereby preventing Domain from liquidating the domain names and paying legal fees incurred by the LLCs in defending multiple lawsuits. Plaintiff also alleges that Keating engaged in conduct that violated orders entered by this court in a related case involving Baron.

On August 25, 2015, Plaintiff filed an Amended Complaint in which it asserts the same claims. According to the Amended Complaint, Keating is a United States citizen, who is domiciled in California and resides in Spain, and he was personally served with the original Complaint in New Orleans. Thereafter, Keating filed his Renewed Motion to Dismiss the Amended Complaint, seeking dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. While Keating's Motion to Dismiss was pending, the magistrate judge denied Domain's motion to conduct discovery on the grounds that the court lacked personal jurisdiction over Keating. Domain objected to the determination and sought reconsideration of that order.

## II.     Analysis

### A.     Motion to Dismiss

With respect to his Motion to Dismiss for lack of personal jurisdiction, Keating contends that Domain has failed to establish that he has minimum contacts with Texas as required by both personal jurisdiction case law and section 1965(a) of the RICO statute. Further, Keating argues that he is immune from prosecution under Texas and Federal law.

Domain responds that section 1965(a), as a venue provision, imposes no jurisdictional limitation, and it need only establish Keating's minimum contacts with the United States. Alternatively, Domain argues, even if the court lacks jurisdiction under the RICO provision, Keating has minimum contacts with Texas sufficient to confer jurisdiction on the court. Because the court determines, for the reasons herein explained, that it lacks personal jurisdiction over Keating, its opinion focuses on this issue, and it need not consider Keating's contentions and motion under Rule 12(b)(6), which will be denied as moot.

"Personal jurisdiction . . . is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted). When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In resolving the jurisdictional issue, the "court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized methods of discovery." *Id.* (citation omitted). If the court chooses to rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case that personal jurisdiction is present. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002). Absent an evidentiary hearing, the court must accept as true the uncontroverted allegations in the complaint and resolve all factual conflicts in the plaintiff's favor. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000). A court need not, though, credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

At issue is whether the court may exercise personal jurisdiction over Keating (1) pursuant to RICO's nationwide service of process provision, or (2) as a result of the allegedly tortious conduct he directed at Texas, which turns on his minimum contacts with Texas.

### 1. *Personal Jurisdiction Under RICO*

The pertinent provisions of the RICO statute provide as follows:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965. Domain contends that, by virtue of RICO's nationwide service provision, subsection 1965(b),[1] personal jurisdiction can be established by showing Keating's ties to the United States. Pl.'s Resp. 2-3 (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); and *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir. 1996)). *Busch* and *Bellaire*, however, concerned the nationwide service provisions in the 1934 Securities Exchange Act ("SEA") and the Employee Retirement Income Security Act ("ERISA"), respectively. *Busch*, 11 F.3d at 1257; *Bellaire*, 97 F.3d at 825. Moreover, RICO's nationwide service provision has been noted to differ from its SEA and ERISA counterparts. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex.

---

[1] The circuits are split on which subsection of 18 U.S.C. § 1965 grants nationwide jurisdiction. Domain has adopted the Fourth and Eleventh Circuits' interpretation that subsection 1965(d) authorizes nationwide service of process. A majority of courts, however, including several federal district courts in Texas and this court, have held that subsection 1965(b) authorizes nationwide service of process. *See Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 676 (N.D. Tex. 2008) (collecting cases); *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (same). The court will follow the majority interpretation for the reasons it previously set forth in *Oblio Telecom*.

**Memorandum Opinion and Order – Page 4**

2008) ("Section 1965 . . . places limitations on nationwide service of process that do not exist in other nationwide service of process statutes.").

Specifically, RICO's venue provision under section 1965(a) has been read as modifying its nationwide service provision, thus influencing the jurisdictional requirements in a RICO action. The Fifth Circuit addressed the interplay between sections 1965(a) and (b) in *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916 (5th Cir. 1987). Like Domain, the plaintiffs in *Caldwell* argued that a Texas district court had personal jurisdiction over nonresident defendants because RICO provides for nationwide service of process. *Id.* at 918. The Fifth Circuit, however, noted section 1965(a)'s requirement that civil actions be brought where a defendant "resides, is found, has an agent, or transacts his affairs." *Id.* (citing 18 U.S.C. § 1965(a)). The *Caldwell* court also noted that a number of district courts have held that this language requires that a defendant be conducting business in the forum. *Caldwell*, 811 F.2d at 918. Because none of the nonresident defendants in *Caldwell* conducted business in Texas, the court concluded that RICO could not provide a basis for personal jurisdiction. *Id.* Thus, under *Caldwell*, a plaintiff must first establish personal jurisdiction over at least one RICO defendant before a court can exercise personal jurisdiction over nonresident RICO defendants. *Id.*; *see also Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 675 (N.D. Tex. 2008); *Rolls-Royce Corp.*, 576 F. Supp. 2d at 779-80.

Since Keating is the only Defendant in this case, Domain must establish that Keating had sufficient minimum contacts with Texas for the court to exercise jurisdiction over him under RICO. *See Caldwell*, 811 F.2d at 918.

### *2.      Minimum Contacts*

To ensure that exercising jurisdiction over Keating comports with due process, the court musk ask (1) whether Keating has "minimum contacts" with Texas, and (2) whether maintenance of a suit against Keating would offend traditional notions of fair play and substantial justice. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). This "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.* (citations and quotation marks omitted).

If Domain successfully shows that Keating has minimum contacts with Texas that relate to Domain's claims, the burden then shifts to Keating to show that exercising jurisdiction would be unfair or unreasonable.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  In considering whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice," the court examines (1) the burden on Keating; (2) Texas's interests; (3) Domain's interest in obtaining convenient, effective relief; (4) the judiciary's interest in efficiently resolving controversies; and (5) Texas's interest in furthering important social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Domain offers several arguments in support of its contention that Keating has minimum contacts with Texas.  First, Domain alleges that Keating drafted legal papers and directed his agents in Texas to file them under their own names, thereby engaging in phantom litigation. Domain, though, does not present or identify evidence of facts that, if proved, could show that Keating has engaged in any phantom litigation in Texas.  Moreover, the facts pleaded do not

establish any nexus between Keating's legal filings on Baron's behalf and the injury of which Domain now complains. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (explaining that for specific jurisdiction to apply, the alleged injury must arise out of or relate to the defendant's activities in the forum state). Domain's conclusory allegations to the contrary are insufficient to establish that Keating's legal filings translate to him conducting business in Texas. *Panda Brandywine*, 253 F.3d at 869.

Second, Domain alleges that Keating sent three e-mails to individuals, two of whom resided in Dallas, Texas, in an attempt to persuade them to violate a court order related to prior litigation. This attempt, Domain contends, is evidence that Keating conducted business in Texas. Again, assuming the veracity of Domain's allegations, they fail to establish that Keating had sufficient contacts with Texas that would enable this court to exercise personal jurisdiction over him because Domain has not alleged that Keating was in Texas when the e-mails were sent. Moreover, that Keating may have directed his conduct toward persons with connections to Texas does not transform their connection into Keating's own. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Third, Domain also argues that Keating engaged in tortious conduct calculated to cause injury in Texas. In this regard, Domain alleges that in a prior suit, Lisa Katz ("Katz"), the operations manager for the LLCs, was authorized by court order to possess and control the LLCs' assets, including domain names registered at Fabulous.com, an Australian domain name registrar. Domain, however, contends that Keating gained unauthorized access to Fabulous.com and imposed a "lock" on the ownership registration data associated with the registered domain

names. This lock prevented ownership data from being altered, which in turn prevented Katz from accessing, managing, and selling the domain names registered with the site. As Katz resided in Dallas, Texas, at the time of Keating's alleged clandestine activity, Domain contends that his actions were intended to cause injury in Texas, thus allowing the court to exercise jurisdiction over him.

Domain's argument for exercising jurisdiction on this basis relies solely on the Supreme Court's ruling in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Court concluded that when a defendant intentionally directs tortious activity at a forum state, and the brunt of the injury is felt by the plaintiff in that forum state, the defendant should reasonably anticipate being haled into court in that state. *Id.* at 788-89. In *Calder*, the publication at issue was distributed by an entity that had its largest circulation in the forum state. *See id.*

Domain's reliance on *Calder* is misplaced because the defendant in that case "expressly aimed" his tortious conduct at the forum state. *Id.* at 789. Here, the facts alleged by Domain show that Keating's alleged tortious conduct was focused and aimed at Fabulous.com, an Australian company. Domain has not alleged that Keating impermissibly accessed Fabulous.com in Texas or that Fabulous.com's servers were located in Texas. Keating's only relationship to Texas seems to be that it is merely where Katz happened to be when she attempted to access the domain names; however, a "plaintiff's residence in the forum, and suffering harm there, will not alone support jurisdiction under *Calder*." *Revell*, 317 F.3d at 473. Keating's connection to Texas appears all the more attenuated considering that Katz could just have easily attempted to access the domain names from another State.

In sum, the court concludes that Keating's actions do not demonstrate that he purposefully availed himself of the privilege of conducting business in Texas, or that he invoked

the benefits and protection of Texas law. *Burger King*, 471 U.S. at 475. Thus, the court has no basis under the RICO statute, or otherwise, to exercise personal jurisdiction over Keating.

### B. Motion for Reconsideration

The court's determination that it lacks personal jurisdiction over Keating moots Domain's Motion for Reconsideration. Accordingly, the court will deny as moot the motion for reconsideration.

### III. Conclusion

For the reasons stated, the court lacks personal jurisdiction over Keating. Accordingly, Defendant Keating's Renewed Motion to Dismiss for lack of personal jurisdiction is **granted;** Defendant Keating's Renewed Motion to Dismiss under Rule 12(b)(6) is **denied as moot;** and Domain's Motion for Reconsideration is **denied as moot**. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court will enter a judgment by separate document.

**It is so ordered** this 30th day of September, 2016.

_____
Sam A. Lindsay
United States District Judge